Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 21-1264 United States v. Andy G. Morales-Velez. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin. Before you begin, I just want to welcome Judge Krugelman to San Juan on behalf of our court. It's the first time she's sitting with us in Puerto Rico, so I'm glad that you're here. Okay, go ahead. Good morning, Your Honors. May it please the court, Alejandra Burton Lopez on behalf of Mr. Morales-Velez. I'd like to ask for two minutes of rebuttal, if I may. You may. The court below did not adequately justify a 100% variance, two times the guideline sentencing range of 60 months, to a courtly variance of 120 months in this case. When it did so, it stated facts, but it did not explain why a higher sentence was necessary based on characteristics and conduct of Mr. Morales. It's important to note that this case involved a plea agreement, which had a joint recommended sentence for an already upwardly varying 96-month sentence. And when the court cited the facts that it was relying on for an upwardly varying sentence, it relied basically on some of the same reasons that the government had given for imposing an upwardly varying sentence of 96 months. Those were, number one, the nature of machina and the type of damage a machina can do, the fact that among the material seized were four magazines, two of which were high-capacity and 100 times by round reports, and the fact that some of the bullets were a specific kind of bullet, which is commercially available, that are called provocatively R.I.P. bullets. When the court mentioned these facts in support of its upwardly varying sentence, it then went straight to the boilerplate explanation that it needs. Can I ask you a question? Yes, go ahead. Your client pledged one count and three counts were dismissed, right? That's right. So some of the facts that the district court recited at its sentencing had to do with the counts that were dismissed. How is that permissible for the district court to do in citing to those facts the varying sentence? Well, the facts of the case did show that the machine gun was involved. The fact that the counts were dismissed, there were three counts that were overlapping, which were possession of a firearm, essentially, in one or several configurations. The court didn't actually mention the fact that there were dismissed charges as one of the reasons for the upwardly varying sentence. It cited the three facts of the case that I just mentioned, the nature of the machine gun, the amount of magazines and bullets that were found, and the fact that some of the bullets were R.I.P. bullets. Now, counsel? Yes. This particular statute, the one count that did remain that your client pled to, and the particular sentencing guideline that it issued, please tell me if I've misunderstood this. You said that it was a machine gun factored into that particular statute in that particular guideline? I thought it wasn't. Well, the guideline itself refers to 924C in general, which would encompass either a machine gun or a regular firearm. The fact that the guideline itself posits as a guideline sentence the mandatory minimum that applies under that statute, which is five years. Five years goes far beyond what necessarily is involved in a regular firearm possession case. And when you look to 2K2.1, which different from 2K2.4, does parse out the different peculiarities and circumstances of the crime, then you can see that if you were to pass this conduct through that statute, what you would end up with is a similar sentence to 60 months. So that's why we argue that the circumstances of the case really warranted, if you were going to pay attention to the primordial purpose of the guidelines, which is to treat life defendants who commit life conduct in a life manner, you would end up with a result similar to the guidelines sentencing range that is already recommended by— One way to think about the question is, in your view, is this offense, when committed with a machine gun, a mind-rotten version of the offense? I think that it is, because—and even if it weren't, if you were to say that— But just sticking with why would it be? I think that the fact—because the guidelines as a policy don't make much of a distinction between a regular semi-automatic firearm and a machine gun. They make a little bit of a distinction. To be precise, quantified, it would be two points. If you look at 2K2.1, it would be an additional two points. And if you were going to analogize that into 2K2.4, what you would get at most, if you were going to understand that an increase was required, would be something on the order of 18 months. It really depends on where on the table you land. But at the level of 60 months, that would be kind of the difference between one and the other. So that would put us— I guess the thing that just is a little bit puzzling is that most— every guideline that applies to an offense, on its face, unless it specifies something, is applying to all the possible versions of it being committed. But the idea of a Heartland case or a 9-1 case is what's the average way of doing that crime? And because a machine gun is somewhat an unusual weapon, it's a little hard to see why the 9-1 version of 924C is doing it with a machine gun. And if that's right, then this is a pretty different type of case just by virtue of that fact. Given the underlying offense from a machine gun possession case, in which the offense itself is machine gun possession, so the guideline for it obviously is the 9-1 case, but that is machine gun possession. Well, I would make two points to that, which is that, like I already said, there is a quantifiable way in which the guideline, if you look to other provisions, and it is appropriate to look to other provisions, it actually mandates that guideline policy be considered. So you should look to other provisions. And the quantifiable difference between a semi-automatic firearm or a regular firearm and a machine gun is defined in one of the guidelines. The other fact is that 2K2.4, because it deals with a mandatory minimum, really, if you look at the provision, it compensates for the fact that it is an already high guideline. The policy of the Sentencing Commission is that that guideline is already high, so much so that Chapter 3 and Chapter 4 enhancements or things that would raise the guideline are absolutely ignored in determining what the—so the criminal history of the defendant is ignored and any aggravating adjustments are ignored because it's recognized already. One last question. You mentioned that the recommended sentence was already there. The recommended sentence was already there, yes. So it must be something which even you can see. There's something about the sentence that would justify the error. Well, I think that it would be unfair to see it that way because it's a situation where the bargaining power between the parties is completely disparate, especially in light of a draconian mandatory minimum that was a little more than what was in his head, which, if he had elected to go to trial, would have exposed him to a 30-year mandatory minimum if he was found guilty with no possible way out. Let me ask you this way. Assuming that a variance of some sort would be justified, you seem to be making an argument that because the increment above the recommended variance would need to be separately justified, and I guess I'm trying to figure out what level of express explanation needs to be given because our case law doesn't demand that type of precision in explaining the basis for a sentence. So one thing that you said was the recommendation itself mentioned certain factors, and then the ammunition and the magazines. And the district court mentioned those same factors, and since they were already in the recommendation, what, 96 months, somehow there had to be a separate explanation of why that has to go above. And I guess I'm just a little puzzled why that would be. If there is factors that would justify a variance, and the judge mentions those factors and then sets the variance at X amount, and it's an increment above, but not a vast increment above the recommended amount, why wouldn't it be sufficient to say, oh, well, he just was weighing differently how significant those factors were? Well, the obligation to explain the sentence is always present, even if the parties make a joint recommendation, even if it's within the guideline directed, if it's below, if it's above, if it's part of a recommended sentence, it doesn't matter. The court's obligation is to give a reasonable explanation of the sentence. Sometimes the circumstances will communicate to an appellate court what the reasons were. In this case, the court specified specific reasons. They mimicked or picked up reasons that were already offered by the prosecutor, but the defendant did not state that it agreed with any of those reasons. On the record, it did not concede that any of those reasons would have warranted even the 96-month worth of the variance sentence. It simply stated in compliance with its obligation under the plea agreement that it understood that a 96-month sentence in consideration of all circumstances was an appropriate sentence in this case. But this court's obligation is to make sure that the sentence that was actually imposed was reasonably explained in a way that can be reviewed by this court of the entire variance from 60 to 120, not just from 96 and above. And not only the fact of the variance, but the extent of the variance, which is what this court has said has to be justified. Thank you. One more question. Are you still pressing your second issue? The second issue, we understand that because of the civil forfeiture action, we understand that the remedy that we requested for that issue has already been addressed. But would you just point out to this court that the plain language of the rule required the court to attend the motion when it was raised by Mr. Morales? And I think it would be an advisory opinion to just point out that that rule was stated in a mandatory chapter and that the courts are meant to follow it. So I would just make that note. Otherwise, a really big potential for abuse, I think, would be left open in forfeiture proceedings. Because in a civil forfeiture, usually a defendant does not have the ability to make a claim and to prosecute that claim in a civil forfeiture proceeding unless they have counsel, which they don't have a way to have. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the United States please introduce himself on the record to begin? Good morning, Your Honor, and may it please the court. Ricardo Invert Fernandez for the United States. The district court imposed a reasonable sentence. It appropriately justified the variance imposed by pointing to three specific factors that are not accounted for in the guideline that was applied in this case. These factors are the possession of a machine gun, the possession of four magazines, two of which were extended magazines and 125 bullets, and also the fact that some of these bullets were radically invasive projectiles or rifle bullets. I'll start with the machine gun, and I appreciate that Judge Rickleman, you asked the question that I think is at the core of this appeal, whether 2K2.4 factors in the possession of a machine gun. And the categorical answer is that it does not. That guideline accounts for only two things as it was applied in this case, and those two things are the possession of a firearm and that the possession be in furtherance of a drug trafficking crime. And there is precedent in this court to back that up, and I would call this court's attention to the United States v. Moreno Vargas, which is cited in our brief, and the United States v. Sanchez-Coburn. Can I ask you about that? I just am puzzled how to think about when we're talking about a variance and when we're talking about where you can be within the range. So the guideline has a range. It says firearm. It knows what the firearm is. Commission knows what the available firearms are, and it seemed to think as to any firearm, here's the range. What's the reason then to think that the guideline isn't accounting for the type of firearm? Certain things like what time of day it occurred, were there kids around? Those type of things you might think are so case-specific, it's hard to imagine that the commission has all of them in its mind. But it's a little hard to think that the commission doesn't have the idea of a machine gun in mind when it passes this guideline for firearms, given how many guidelines there are about machine guns, how salient machine guns are, and yet it seems without regard to the nature of the firearm, this was the range. So what would make it justifiable that just because it's a machine gun, you could bear it? Well, Your Honor— I know that that's not the only fact of your life, I'm just saying. Yes, Your Honor. Just so I understand where the government's coming from. Your Honor, the simple answer is that, of course, a machine gun is a lot more dangerous than a regular firearm. But the relevant question isn't whether that's true. The relevant question is, did the commission know that when it passed the guideline? Obviously it did. Of course, Your Honor. I think the answer to that question was that in 2K2.4, as a guideline, really follows Congress' lead in how it enacted the— But see, that seems to go in the other direction, which is Congress knew about machine guns too. Yes, Your Honor. And it treated all these offenses, regardless of whether it was a machine gun or not, the same as the single offense. They wanted to separately charge you with machine gun possession. That's a separate crime, right? No, Your Honor. I'd like to push back on that notion because the 924C specifically punishes a defendant that is in possession of a machine gun in furtherance of a drug trafficking crime within 30 years. So what we have here really is legislative judgment made by Congress— That's the max. That's the max. No, that's the min. It's 30 to life when a defendant is in possession of a machine gun in furtherance of a drug trafficking crime. This was a separate part of the statute, right? It's C1A. Yes, Your Honor. Which was charged in this offense, and it was dismissed. But see, the funny thing here is— How are we to understand what the district court did? It doesn't mention the dropped counts, but are you saying implicitly it was reliant on the uncharged conduct? In a sense, Your Honor, and of course the government did mention to the court the dismissed counts when it made its case for a sentence. But more importantly, Your Honor, the fact that the district court honed in on the machine gun during its sentencing rationale shows that, at least in that sense, in the sense that the conduct that the defendant committed and admitted to was conduct that included the particular characteristics of the offense that would elevate it to that level. And that, again, Congress, through its legislative judgment, has said that the conjunction—when you have a machine gun together with the furtherance of a drug trafficking offense, then that results in a very serious situation. Was there a finding by the district court that the machine gun was used in furtherance of— Well, of course, Your Honor. No, was there a finding by the district court on that? Well, Your Honor, that was what the defendant was convicted of. I don't think the court was required to make a specific finding that the machine gun was in furtherance of the drug trafficking crime because that was a fact that was already implicit in— Was it the only firearm at issue? Yes, Your Honor. It was—it's a single firearm at issue, which was a Glock pistol that was chipped, modified to fire automatically. And this is—these are all contested facts in the PSR. So from your perspective, the charge—the conduct which the judge, by the ponderance, was relying on in sentencing was conduct that Congress treats as 30 years minimum. Yes, Your Honor. So from your perspective, the idea that this is a variance upward is a little bit— Well, of course— In what category or in what way? Well, of course it's an upward variance, Your Honor, because the guideline that applied to this case, of course, is a guideline that set the range or the guideline sentence at 60 months. But— But this guideline really that's applying, in your view, when it's a machine gun really isn't the guideline that typically would apply anyway for this type of thing. Yes, Your Honor. It's a work of the uncharged conduct. Of course, 30 years. Counsel, can I move you to one of the other key factors that you started with? Yes, of course, Your Honor. Which is the type of ammunition. Yes, Your Honor. Just to say, I didn't really see any reliable factual basis in the record for conclusions about the type of ammunition. I think the—please tell me if I'm wrong, but I think the only thing in the record was a very brief statement by the prosecutor, you know, just very quickly saying, oh, this is my understanding of this type of ammunition. So from your standpoint, what is the reliable factual basis for that to be a factor in the upward variance here, the type of ammunition, not the amount, the type? Your Honor, I would like to rephrase my answer by stating that any challenge to the evidentiary basis or the record basis for the court's factual finding that the rib bullets are more dangerous was forfeited by the appellant. They never objected below. They never made that argument until they viewed it in their appellate brief. But to get to the merit of your question, Your Honor, there are two things in the record which we can draw upon. One is, of course, the colloquy between the court and the prosecutor, which the prosecutor twice appraised the court of how these bullets worked, and the court assessed that, you know, they functioned in a way similar to— That's not a record, no. Yes, Your Honor, it is. Well— Statement by—usually lawyers don't testify, right? Yes, of course, Your Honor. I think, in a sense, when the court answered or engaged in a colloquy with the prosecutor, it also made a statement that these bullets were blowholes and— But the question is, were they that type of bullet? What in the record shows they were? Well, Your Honor, it's uncontested in the record that these were R.I.P. bullets, and of course, the court seemed to be familiar with them in some sense. What's the predicate record basis for them being R.I.P. bullets? Oh, sorry, I understand your question now. Yes, in the PSR, it's a non-contested fact that when the law enforcement agency seized the machine gun from the defendant's car, the defendant not only told them that it was, in fact, a machine gun, but the defendant also specifically advised the law enforcement agents that the bullets in question were R.I.P. bullets. Those bullets are R.I.P. bullets, which is noteworthy for various reasons. And that was not objected to by the defendant? Yes, Your Honor, that's not objected to in the PSR, and it's noteworthy for two reasons. One, it gives the record basis that they were R.I.P. bullets, and it's also important because it shows that the defendant himself believed that these bullets were noteworthy, special in some way, so as to necessitate him specifying to the law enforcement agents that these are, in fact, the bullets in that machine gun are this specific type of bullet. That's something that never happens unless the bullets in question are specifically noteworthy, which, of course, in this case, they were. And to get back to my prior point, Your Honor, which I didn't quite finish, I think, the district court, when it made a categorization of how the bullets worked, it seemed to have some knowledge about these bullets, and, of course, it's a holding by this court in, I think, a recent opinion by Judge Celia Teixeira, United States v. Teixeira, if I'm not mistaken, that a court can bring into the court its own knowledge and expertise in the appraisal of evidence in the record. So to the extent that it was – the court knew that these were fragmenting bullets and bullets that fragment on impact, and was apprised of that by the government as well, the court was well within its discretion to apply its knowledge to that situation and hold that bullets that fragment are particularly dangerous. On the forfeiture question before you wind up, what is your answer to the concern raised by the defendant about the practice of doing the forfeiture in the civil proceeding in a case like this? Well, Your Honor, the government cites, and it's briefed to Pierre and a number of other circuit authorities, opinions by sister circuit courts, and they all stand for the proposition that when a civil forfeiture proceeding has been initiated, the court is well within its discretion or well within its power to reject a 41G motion raised in a criminal setting. But just as a practical matter, though, we have Rule 32, and there's a pretty big difference if I'm understanding how it operates. If it's a civil proceeding, there's no – is there going to be representation for an indigent criminal defendant in that forfeiture proceeding? And if not, just how does the government proceed with that reality? Well, Your Honor, that shouldn't be a factor that should be pursued in this specific case, because in this case, the court made sure that the defendant would be making a civil proceeding. I'm really asking how the U.S. Attorney's Office in Puerto Rico understands this problem and what the practice is. In other words, the practical problem being raised is that in all these cases, you could just do a civil forfeiture, and effectively, if it's an indigent criminal defendant, they're effectively not – you can guarantee that they'll be able to represent themselves in that proceeding. And is it the understanding that, yes, that's fine, that's just the way the rules work, and we can do what we want? Or is that not the practice, and this is a kind of court case because there was a plea agreement, there was an agreement to exclude it from the plea, and that's why we're here? Is this an unusual case, or is this a regular practice? Well, Your Honor, I don't currently have the knowledge to say if this is common practice. I can say that in this case, there was a specific agreement that the court was apprised of at sentencing, that when the plea agreement was bargained and before the plea was entered, the parties reached an agreement to take out the $20,000 from the plea agreement and to leave that for litigation in a civil proceeding. So in this particular case, that was done according to agreement by the parties, and again, the court made sure when the defendant raised his concerns about representation in a civil proceeding, the court made sure that he would have representation by the federal public defender's office. Thank you. Thank you. The government rests on its brief. Thank you, Counsel. At this time, if Counsel for the Appellant would please reintroduce herself on the record to begin. She has a two-minute rebuttal. Alejandra Rodriguez, again, on behalf of Mr. Morales. I want to just start by saying, although there is this drug in a 30-year mandatory minimum for possession of a machine-gun incidence of a drug trafficking crime, that is not a sentence that anyone, I don't think even the government, if pressed, would think was reasonable. The sentencing commission doesn't necessarily think that it is reasonable. It is used in indictment to really prop up the bargaining leverage that the prosecution has in the case. Nobody pleads guilty to this crime, and the people who are convicted of this crime, it's because they elected to go to trial and end up having to have this sentence imposed on them, even though they, and it rarely ever happens, because usually the fee bargain is extracted under 922, I'm sorry, 924C, for simple possession of a firearm. So the sentencing commission has to incorporate a guideline sentence that accounts for the mandatory minimum, because that's what's mandated by the statute. So they have to incorporate that in their 2K2.4 guideline, but the purpose of having a separate guideline is to try to tip back every other additional way of increasing the amount that's included in 2K2.4, because if implicit in that is the recognition that it is already ratcheted up too high, because it has this cliff that doesn't account for any of the subtleties and distinctions. Mr. Morales did not deserve a 30-year mandatory minimum sentence. His conduct, he has no prior history of violence, he has never been accused or engaged in any kind of violence. And I would like to add that the facts that the prosecution is referencing are all taken from the affidavit in support of his claim, facts which were contested by Mr. Morales throughout the entire proceeding. Facts that, if you look at the stipulation of facts and the disclaimer that was made about the stipulation of facts in the change of plea hearing, you will see that the actual stipulation to the plea agreement contains very unusual language, that this is simply the government's version of the facts, and that the defendant is only admitted a limited amount. The statement about the R.I.P. bullets, that was in the PSR and not objected to? Well, the problem is that the PSR has two sets of facts. It has the sets of facts that's included in the affidavit in support of the complaint, which he could have objected to, but he wouldn't have, I mean, he would have had to sit and testify, there would have been an officer saying something else. But the PSR does acknowledge that there is a different set of facts from the stipulation of facts in the plea agreement, which even though it's the government's set of facts, it's significantly pared down and does not include those other statements that he made. If I could just add one thing about the civil forfeiture, I think that when an indigent defendant is relegated to the civil forfeiture process, it will almost always end in a forfeiture by default, because of the difficulties of litigating, and even for me it was difficult to litigate a civil forfeiture case because it's a very complicated and different set of laws, so I can't even imagine what it would be like for somebody to try to do it in another district from behind bars. And if there are no other questions, I'd be happy to address any other questions the court has. Thank you very much. Thank you, counsel. That concludes argument in this first case.